**Morton BERMAN, Plaintiff,**

v.

**INFORMIX CORPORATION, Defendant.**

**No. 98 Civ. 5182 (RWS).**

United States District Court,
S.D. New York.

Dec. 23, 1998.

---

Mr. Morton Berman, Brooklyn, pro se.

Lankler Siffert & Wohl, New York City by Charles T. Spada, of counsel, Wilson Sonsini

Goodrich & Rosati, Palo Alto, CA by Steven M. Schatz, Laurie B. Smilan, of counsel, for Defendant.

## OPINION

SWEET, District Judge.

Defendant Informix Corporation ("Informix") has moved pursuant to 28 U.S.C. § 1404(a) to transfer this action brought by Morton Berman, *pro se*, ("Berman"), to the Northern District of California. For the reasons set forth below, the motion is granted.

### Prior Proceedings

Berman filed the present action against Informix on July 29, 1998. The complaint alleges Informix engaged in various improper activities that resulted in the publication of false and misleading financial statements for the years 1995 and 1996. On August 28, 1998, Informix moved to transfer the action to the Northern District of California. The motion was deemed fully submitted on September 30, 1998.

### Facts

Informix is headquartered in Menlo Park, California and designs and licenses high performance relational database management system software.

On March 31, 1997, Informix disclosed in its Annual Report on form 10–K filed with the Securities & Exchange Commission ("SEC") that as of the end of 1996, approximately $177 million worth of Informix software licenses had not been resold to end user customers, and that Informix had concurrently purchased goods or services from resellers who had purchased Informix's licenses. On April 1, 1997, Informix announced that it expected to report disappointing revenues and earnings for the recently concluded first quarter of 1997.

Following the announcements, investors filed securities fraud class action complaints against Informix and its officers in the United States District Court for the Northern District of California. *See Weaver v. Informix Corporation*, No. C–97–1289 SBA

(N.D.Cal. April 11, 1997). By May 19, 1997, a total of twelve complaints had been filed in the Northern District of California. On August 20, 1997, these and any subsequently filed actions were consolidated.

On August 7, 1997, Informix announced its intention to restate its financial results for 1996. New complaints promptly were filed, extending the end of the alleged class period through August 7, 1997. In September 1997, responding to additional announcements by Informix, the Northern California plaintiffs filed an amended complaint, which alleged an expanded class period beginning on January 31, 1996 (the date Informix announced its 1995 results) and ending on September 22, 1997. *See Kremnitzer v. Informix et al.*, No. C–97–1318 SBA (filed September 24, 1997). On October 17, 1997, after more than twenty complaints had been filed and more than 1,200 individual Informix shareholders had moved to lead the putative plaintiff class, U.S. District Judge Armstrong of the Northern District of California appointed lead counsel.

The lead plaintiffs then filed a consolidated amended federal complaint on April 6, 1998 (the "Consolidated Amended Complaint"). This action is now captioned *In re Informix Corp. Securities Litigation*, Master File No.: C 97–1289 CRB (N.D.Cal.) and is pending before U.S. District Judge Charles Breyer.

The consolidated actions also include two additional complaints brought on behalf of limited shareholder groups: *Teachers Retirement System of Louisiana, et al. v. White, et al.*, No. C–97–02312 CRB (N.D.Ca.), and *Williams v. White, et al.*, Case No. C–98–1096–CRB (N.D.Cal.). Both the *Teachers Retirement Fund* and *Williams* cases allege the same wrongdoing as alleged in *In re Informix*, and they also are pending before Judge Breyer.[1]

Most of Informix's witnesses and many non-party witnesses reside in Northern California. The members of Informix's senior management who managed the company's domestic operations during the time period at issue in both this action and the California

---

1. Although the claims and time periods asserted in *Louisiana Teachers* and *Williams* are not identical to each other or to the Consolidated Amend-

ed Complaint, Judge Breyer has consolidated these cases for most pretrial purposes.

actions reside in Northern California. The lower-level individuals who held positions in the company's accounting, finance and internal audit groups also reside in Northern California. Similarly, the company's outside auditors, Ernst & Young LLP (who are defendants in the Northern California securities cases but not in this action), are based in Northern California.

The relevant documents, from all over the world, are now, or soon will be, in Informix's attorneys' offices in Northern California. Most of the relevant documents are already in California. Informix has gathered a large volume of documents—approximately 1.5 million pages from around the world—that relate to the claims arising from Informix's financial restatement. All of these documents are currently stored in Northern California. Based on the review of transactions for which revenue was reversed during the restatement process, Informix has not located any relevant documents in New York to date.

### I. *Motion to Transfer Venue Under Section 1404(a) Is Granted*

#### A. *Section 1404(a) Considerations*

■ The Court has the authority, pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of California. Section 1404(a) provides that:

for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. 1404(a). This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts. *See Wilshire Credit Corp. v. Barrett Capital Management Corp.,* 976 F.Supp. 174, 180 (W.D.N.Y.1997). Section 1404(a) strives to prevent waste "'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Wilshire,* 976 F.Supp. at 180 (*quoting Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)).

■ "'[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.'" *Linzer v. EMI Blackwood Music Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y.1995) (*quoting In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (*citing Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988))). The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F.Supp. 955, 962 (S.D.N.Y.1995); *see Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989); *Austin v. International Bhd. of Teamsters–Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990).

■ The defendant moving for transfer must, in essence, demonstrate "'that transfer is in the best interests of the litigation.'" *Linzer,* 904 F.Supp. at 216 (*quoting Eskofot A/S v. E.I. du Pont de Nemours & Co.,* 872 F.Supp. 81, 95 (S.D.N.Y.1995)); *see also Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). The movant "must support the transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 987 (E.D.N.Y.1991).

■ The inquiry on a motion to transfer is twofold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. *Wilshire,* 976 F.Supp. at 180.

■ In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice" under § 1404(a), courts generally consider several factors. The factors to be considered in the instant case include (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203 (S.D.N.Y.1998) (*citing Wilshire,* 976 F.Supp. at 181); *see Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); *Cento Group, S.p.A v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1060 (S.D.N.Y.1993).

### B. *The Relevant Factors Applied*

■ Venue and personal jurisdiction exist in the Northern District of California. That district encompasses the area surrounding San Francisco. Menlo Park, where Informix is headquartered, is a suburb of San Francisco within the Northern District. The public statements upon which plaintiff sues were issued by Informix at its offices in Menlo Park. Most of the company's officers worked in Menlo Park. Accordingly, this action originally could have been filed in the Northern District of California. Therefore, it is only the second inquiry that requires examination.

Application of the delineated factors reveals that defendants have met their burden under § 1404(a).

### 1 & 2. *Convenience of the Witnesses and Parties*

"Convenience of both the party and nonparty witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Frene N.V. v. Kmart Corp.,* 1998 WL 427688 at *2 (S.D.N.Y. July 29, 1998) (*quoting Frasca v. Yaw,* 787 F.Supp. 327, 331 (E.D.N.Y.1992)).

Virtually all the witnesses with knowledge reside in California. Berman has only identified as witnesses in New York the analysts who followed and reported on Informix during the relevant time period and has assumed that because the important brokerage houses have offices in New York, that the analysts must also reside there. However, many of these brokerages have offices in many other states, including California. More fundamentally, it cannot be assumed that any of the individual analysts who followed Informix live in New York simply because their employers have offices there. Indeed, a number of analysts reporting on Informix are based in other states, including California. No witnesses have been identified who reside in New York.

Thus, for the convenience of the key witnesses, it is in the interests of justice to transfer this action to the Northern District of California. *See Frene,* 1998 WL 427688 at *3 ("the weight of the location of the relevant witnesses taken with [the non-moving party's] concession that 'all [key witnesses] work and reside in Michigan' ... point toward the propriety of transfer to the Eastern District of Michigan"); *Malone v. Commonwealth Edison Co.,* 2 F.Supp.2d 545, 547 (S.D.N.Y. 1998) (ordering transfer citing, among other factors, the fact that "all of the relevant documents, evidence and witnesses will be found" in the transferee district); *Cento Group,* 822 F.Supp. at 1061–62 (fact that seven witnesses resided in California and only one resided in New York was factor in transferring case to California); *see also Centennial Ins. Co. v. Burlington Air Express,* 1998 WL 323486 at *2 (S.D.N.Y. June 17, 1998).

The fact that plaintiff resides in New York and is bringing this action *pro se* is in itself insufficient to shift the balance in favor of keeping the action in the Southern District of New York. *See Barge v. Daily Journal Corp.,* 1996 WL 434561, at *3–*5 (S.D.N.Y. August 2, 1996) (where *pro se* plaintiff resided in New York and defendants resided in California, court transferred action to California because, as in this case, the convenience of witnesses, locus of operative facts

and other factors weighed in favor of transfer).

### 3. *Location of Documents and Ease of Access to Sources of Proof*

The location of documents and ease of access to sources of proof weighs in favor of transfer. "This factor is clearly an important consideration in motions to transfer pursuant to 28 U.S.C. § 1404(a)." *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 58 (N.D.N.Y.1990) (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *see Linzer*, 904 F.Supp. at 217 (noting that "most efficient access to . . . documents and witnesses [are] factors that strongly militate in favoring litigating this case in New York").

Documents will play a large role in the discovery and trial phases of this case. The relative convenience and lower cost of a trial in Northern California—where the documents are located now—strongly weighs in favor of transferring this action to the Northern District of California. *See Gerling American Insurance Co. v. FMC Corp.*, No. 97 Civ. 6473(LMM), 1998 WL 410898 at *3 (S.D.N.Y. July 22, 1998) (citing the location of essential documents as a factor in ordering transfer); *Malone v. Commonwealth Edison Co.*, 2 F.Supp.2d 545, 547 (S.D.N.Y.1998) (ordering transfer citing, among other factors, the fact that "all of the relevant documents, evidence and witnesses will be found" in the transferee district); *Cento Group, S.p.A. v. OroAmerica*, 822 F.Supp. 1058, 1062 (S.D.N.Y.1993) (ordering transfer in party "[t]ransfer will facilitate access to the relevant documents and records"). *See also Centennial Ins. Co.*, 1998 WL 323486 at *2; *Steinhardt Partners v. Smith Barney*, 716 F.Supp. 93, 95–96 (S.D.N.Y.1989) (consolidating pretrial discovery and minimizing expenses are factors supporting transfer).

### 4. *Locus of Operative Facts*

"Where the operative facts occurred is an obvious factor to consider." *Pall Corp. v. PTI Technologies, Inc.*, 992 F.Supp. 196, 200 (E.D.N.Y.1998). Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district. *See Viacom Int'l, Inc. v. Melvin Simon Productions*, 774 F.Supp. 858, 867 (S.D.N.Y.1991) (*citing Computer Horizons Corp. v. Knauer*, 483 F.Supp. 1272 (S.D.N.Y. 1980)). This factor also supports the transfer to California.

The Northern District of California is the locus of operative facts in this case. Informix is headquartered there. Further, the statements that form the basis of plaintiff's claims originated there.

### 5. *Availability of Process to Compel Attendance of Unwilling Witnesses*

The members of upper management at Informix during the relevant time period are no longer employed by Informix, but most of them still reside in the San Francisco area. These individuals' testimony will be central to the main allegations both in the California actions and in this case: Informix's knowledge of the allegedly improper revenue recognition practices. As non-parties to this action, they ordinarily cannot be compelled to appear at trial in New York.

In addition, numerous other former lower-level company employees in the Menlo Park office also may be required for trial. These individuals cannot be compelled to travel from California to New York to testify at trial.

Furthermore, Informix's outside auditor, Ernst & Young LLP, provided audit services from its offices in Northern California. In a securities case, a company's outside auditor is usually called upon to testify concerning the defendant company's financial statements. While Ernst & Young as a corporate entity might be subject to a subpoena in New York by virtue of its New York offices, the individuals who actually performed Informix's audit work, who reside in California, might not be subject to compulsory process.

The fact that these key witnesses may not be compelled to testify in a New York action is an important factor weighing in favor of transfer. *Gerling American Insurance Co. v. FMC Corp.*, No. 97 Civ. 6473(LMM), 1998 WL 410898, at *3 (S.D.N.Y. July 22, 1998) ("The court concludes that although several witnesses reside in New york, the majority of non-party witnesses reside in Kentucky, and

this factor [availability of compulsory process], therefore, favors a transfer to Kentucky"); *Cento Group,* 822 F.Supp. at 1062 ("The availability of compulsory process favors transfer" to California where most of the witnesses (excluding foreign witnesses) resided in California).

### 6. *Relative Means of the Parties*

Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered. *Hernandez,* 761 F.Supp. at 989; *see Pall,* 992 F.Supp. at 200 ("The Court may also consider ... whether a disparity between the parties exists with respect to their relative means, such as in the case of an individual plaintiff suing a large corporation").

Granted, Berman is likely suing a corporation that possesses considerably greater financial assets. However, no showing has been made that litigating this action in California would impose an undue hardship on the plaintiff. Accordingly, this factor weighs neutrally in the overall analysis. *See Hernandez,* 761 F.Supp. at 989 (according factor little or no significance absent showing of disparity of means between corporate defendant and individual plaintiff).

### 7. *Forum's Familiarity With Governing Law*

Although Berman has alleged common law claims for fraud, negligence and negligent misrepresentation in addition to his federal securities law claims, he does not specify whether these claims fall under the law of California or New York. Thus, this factor is neutral. *See Cento Group,* 822 F.Supp. at 1062 (neither "forum's familiarity or unfamiliarity with governing law justif[ied] transfer" where plaintiff brought a federal patent claim, since "presumably both courts in New York and California are equally likely to be familiar with federal patent law.").

### 8. *Weight Accorded Plaintiff's Choice of Forum*

A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant. *See Orb Factory,* 6 F.Supp.2d at 210;

*Westwood Ventures,* 1997 WL 266970, at *2 (*citing Fontana v. E.A.R.,* 849 F.Supp. 212, 215 (S.D.N.Y.1994)); *Kolko v. Holiday Inns, Inc.,* 672 F.Supp. 713, 715 (S.D.N.Y.1987). Where the factors are equally balanced, the plaintiff is entitled to its choice. *See Teachers Ins. and Annuity Ass'n of America v. Butler,* 592 F.Supp. 1097, 1106 (S.D.N.Y. 1984). Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, *see Levitt v. State of Maryland Deposit Ins. Fund Corp.,* 643 F.Supp. 1485, 1493 (E.D.N.Y.1986), or where the plaintiff is a resident of the forum district. *See, e.g., Orb Factory,* 6 F.Supp.2d at 210; *AMVEST Capital Corp. v. Banco Central, S.A.,* 628 F.Supp. 1258 (1986).

However, the emphasis placed by a court on this choice diminishes where "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Nieves,* 700 F.Supp. at 772; *see Westwood Ventures,* 1997 WL 266970, at *2; *see also Kolko,* 672 F.Supp. at 715 (noting that if the balance of several factors strongly favor defendant, plaintiff's choice may be disturbed).

In the instant case, the weight accorded to plaintiff's choice of forum is far outweighed by the factors discussed above which point overwhelmingly in favor of transfer to California. *See Giuliani, S.p.A. v. Vickers, Inc.,* 997 F.Supp. 501, 503 (S.D.N.Y.1998) ("The only factor that weighs against transfer is plaintiffs' choice of forum .... That minimal connection to New York does not outweigh the numerous and substantial connections that this action has to Nebraska, and the significant factors that favor transfer to that forum.").

In a large securities case like this, where there are multiple claimants and related class actions, the principle favoring plaintiff's choice of forum carries far less weight. *See Shulof v. Westinghouse Electric Corporation,* 402 F.Supp. 1262, 1263 (S.D.N.Y.1975). In *Shulof,* the court noted that in the context of stockholder class actions this principle carries "little weight in stockholder class actions

because as the Supreme Court has noted,' ... [w]here there are hundreds of potential plaintiffs ... all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Shulof,* 402 F.Supp. at 1263 (*quoting Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Although Berman's action is not a class action, the principle asserted in *Shulof* is the same, since as shown in Informix's opening brief, multiple class actions alleging nearly identical claims have already been filed against Informix. Thus, Berman is only one among many plaintiffs who could claim that his home state is the appropriate forum. In this situation is makes most sense to try all the actions where the relevant events occurred and the witnesses and documents are located.

### 9. *Trial Efficiency and Justice*

■■■ Beyond these particular concerns, however, a district court has discretion to transfer an action to where the trial would best be expedient and just. *See Red Bull Assoc. v. Best Western Int'l, Inc.,* 862 F.2d 963, 967 (2d Cir.1988). "The relevant docket conditions of the transferor and transferee courts[,] [for example,] are relevant" to the transfer determination. *Eichenholtz,* 677 F.Supp. at 202.

Trying all the related actions in California is far more efficient than allowing separate actions to proceed in New York and California. Transfer will prevent duplicative litigation and avoid the risk of inconsistent results. *See Recoton Corp. v. Allsop, Inc.,* 999 F.Supp. 574, 578 (S.D.N.Y.1998) ("[I]f this court were to deny Allsop's motion to transfer, the parties may be subject to duplication litigation. Therefore, in the interests of justice, and in the absence of any other factor weighing significantly on the side of maintaining the action in New York, the case should be transferred.").

■■■ Indeed, one of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district. *See Connors v. Lexington Ins. Co.,* 666 F.Supp. 434, 455 (S.D.N.Y.1987) ("[u]nless there are compelling reasons otherwise, there is no justification for separate trials in separate districts") (*quoting Teleprompter Corp. v. Polinsky,* 447 F.Supp. 53, 56 (S.D.N.Y. 1977)).[2]

In *Connors,* the Southern District transferred a securities fraud class action to a district in which a related class action was already pending, citing the Second Circuit's policy against the fragmentation of related litigation. The Court stated:

> The pendency of related litigation, as discussed above, is well recognized as a very important factor in deciding a transfer motion. In this instance, the Florida action involves the same issues, the same allegedly fraudulent transactions, the same defendants as in *Connors* as well as additional defendants, and the same proposed class. Having two such actions proceeding at the same time, involving duplicative discovery and motion practice, would serve no purpose and might lead ultimately to inconsistent results, a possibility that is heavily frowned upon by the courts.

*Connors,* 666 F.Supp. at 455.

Similarly, in *Steinhardt Partners,* defendants requested a transfer from New York to the Northern District of California, where class actions involving the same parties and subject matter were pending. *Steinhardt Partners,* 716 F.Supp. at 95. The court granted the motion to transfer, finding "[p]olicy considerations favoring the litigation or related claims in one forum are the consolidation of pretrial discovery, the minimization of time and expense for parties and witnesses, and the reduction of inconsistent results." *Id.* at 95–96 (citing *Berg v. First American Bankshares, Inc.,* 576 F.Supp. 1239, 1243 (S.D.N.Y.1983) ("Pendency of such ['intimately related cases'] in the transferee forum weighs heavily in favor of transfer")).

2. *See also Faigenbaum Machinery, Inc. v. Scott & Williams, Inc.,* 344 F.Supp. 1267, 1271 (S.D.N.Y. 1972).

The California court is familiar with the federal securities law issues which rise in this case and the California case and has already spent considerable time coordinating the numerous cases already pending against Informix. A special master has been retained to determine whether a global settlement can be achieved.

Berman has claimed that he would be subjected to extensive traveling expenses if he is required to travel to California for trial. However, all of the depositions of witnesses having relevant testimony, such as Informix officers, employees (former and current), and accounts must be taken in California where they reside. The incremental inconvenience and cost of trying this case in California therefore will be relatively minimal. The exhibits to Berman's complaint contain one statement Berman received from a broker, Brown & Co., which indicates that he had sufficient wealth to purchase nearly $1.5 million in securities. Moreover, these purchases constitute but a few companies in which Berman has invested substantial money. According to Informix, Berman has filed a number of securities lawsuits against numerous companies, including Sun Microsystems, EMI and L.A. Gear, indicating that he has the ability to invest significant amounts of money in other companies' stock as well. It would appear that Berman has more than ample resources to try the case in Northern California.

*Conclusion*

For the foregoing reasons, it is in the interests of justice to transfer this action to the U.S. District Court for the Northern District of California, where Informix is headquartered, where the allegedly wrongful acts occurred, where numerous other actions are pending, whether the relevant documents are located and where most of the witnesses reside. Accordingly, Informix's motion to transfer this motion to the Northern District of California is granted.

It is so ordered.