**In re The BENNETT FUNDING GROUP, INC., Debtors.**

**Richard C. Breeden, Trustee for the Bennett Funding Group, Inc., et al., Plaintiff.**

**v.**

**The Aegis Consumer Funding Group Inc., Aegis Securitized Assets, Inc., Aegis Consumer Finance, Inc., Aegis Financial Advisors, Aegis Capital Markets, Aegis Auto Finance, Inc., Aegis Acceptance Corporation, John Does 1–100, Whitehall Financial Services Group, Inc., PCG Management, Inc., Atlas Holdings Group, Inc., Robert I**

---

244

Weingarten, Gerry R. Ginsberg, Ilene S. Weingarten, Philip A. Fitzpatrick, Rita C. Villa, Gary Winnick, Abbott Brown, as Trustee of the Brown Living Trust, Palomba Weingarten, and John Does 101–200, Defendants.

Bankruptcy No. 61376.
No. 98–CV–1937(LEK/RWS).

United States District Court,
N.D. New York.

Feb. 7, 2001.

Gary J. O'Donnell, Saperston, Day Law Firm, Rochester, NY, Kenneth M. Alweis, Saperston, Day Law Firm, Syracuse, NY, for plaintiff.

David J. Altman, phv, Mark L. Block, phv, James S. Schreier, phv, Christensen, Miller Law Firm, Los Angeles, CA, for defendants.

## *MEMORANDUM—DECISION AND ORDER*

KAHN, District Judge.

Presently before the Court is a motion to transfer filed by Whitehall Financial Group, Inc., PCG Management, Inc., Atlas Holding Group, Inc., Robert L. Weingarten, Gerry R. Ginsberg, Ilene S. Weingarten, Philip A. Fitzpatrick, Rita C. Villa, Gary Winnick, Abbot Brown as trustee for the Brown Living Trust, and Palomba Weingarten (collectively "Defendants"). For the following reasons, Defendants' motion is GRANTED.

## I. BACKGROUND

### A. *Factual Background*

The present motion arises out of the Trustee's filing of a bankruptcy avoidance action against Defendants to obtain for the bankruptcy estate allegedly fraudulent transfers involving the debtor and Defendants. The Trustee alleges, in part, that various Defendants made loans in the amount of $9.5 million, represented by two non-recourse promissory notes, to the Bennett Funding Group ("BFG") and Bennett Management & Development Corporation ("BMDC"). BFG and BMDC secured the notes by allegedly pledging common stock in each worth $47 million to the Aegis Consumer Funding Group.

The Trustee also alleges that the loan transaction gave various Defendants an irrevocable option to purchase the shares for $9.5 million at any time as long as certain conditions were met. According to the complaint, on February 22, 1996, approximately 17 days after the loan transaction was complete, various defendants gave notice of their intent to exercise their option to purchase the shares. On February 23, 1996 the same defendants sent a letter demanding that BFG and BMDC pay all principle and accrued interest on the notes within two days.

BFG and BMDC defaulted on the loan and the Defendants foreclosed on the stock, purchasing it at a public foreclosure sale in March of 1996. The Trustee claims that this series of events, undertaken on the eve of BFG's and BMDC's bankruptcy, was merely a fraud to cover the sale of $47 million worth of stock for only $9.5 million. In response, the Defendants argue, in part, that they were the ones defrauded because BFG and BMDC misrepresented their solvency to them in order to obtain the loan. Moreover, the Defendants argue that the transaction was engaged at arms-length between all the parties.

### B. *Procedural Background*

On March 16, 1998, various Defendants filed a motion to withdraw the present proceeding from the Bankruptcy Court. This Court granted that motion on March 8, 2000 reasoning largely that, because the claims at issue needed to be tried before a district court jury and could not be tried before a bankruptcy court judge, judicial economy militated in favor of withdrawal. Relying on convenience arguments and forum selection clauses in the underlying promissory notes at issue mandating that "all actions or proceeds relating directly or

indirectly hereto shall be litigated in courts located within the State of California," Defendants filed the current motion to transfer the matter to the United States District Court for the Central District of California, pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a) on July 28, 2000.

## II. DISCUSSION

### A. Transfer Pursuant to 28 U.S.C. § 1406(a)

■ Defendants argue that the Northern District of New York is an improper venue because of the forum selection clause contained in the promissory notes. Under 28 U.S.C. § 1406(a), a district court may transfer a case to any district or division in which the case originally could have been brought or dismiss the case if the court concludes that venue is improper. See 28 U.S.C. § 1406(a). Because venue is "a personal privilege to each defendant, which can be waived, and is waived ... unless timely objection is interposed," Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371 n. 1 (2d Cir.1966) (quoting 1 James Wm. Moore et al., Moore's Federal Practice ¶ 146(6) (2d ed.1964)), defendants wishing to challenge the propriety of venue must do so at the onset of litigation.

Thus, if the defendant does not include an objection to venue "in a responsive pleading or amendment thereof," waiver occurs. Fed.R.Civ.P. 12(h)(1). Moreover, once waived, "any defect in venue is cured, and the benefits of a § 1406(a) transfer for lack of venue are no longer available." Orb Factory Ltd. v. Design Science Toys, Ltd., 6 F.Supp.2d 203, 207 (S.D.N.Y.1998). In the instant case, Defendants failed to assert that venue was improper in its answer to the original complaint. They also interposed ten counter claims against Plaintiff seeking various forms of relief, filed a motion to withdraw the bankruptcy reference to this Court, and, after that motion was decided began to conduct discovery. In light of these facts, the Court conclusively determines that Defendants have waived their ability to object to the propriety of venue under 28 U.S.C. § 1406(a). See Agricultural Ins. Co. v. Ace Hardware Corp., No. 98 CIV 8708, 2000 WL 1568313, at *2, 2000 U.S. Dist. LEXIS 15410, at *4 (S.D.N.Y. Oct. 20, 2000).

### B. Transfer Pursuant to 28 U.S.C. § 1404(a)

■ Defendants also request that the case be transferred pursuant to 28 U.S.C. § 1404(a). Under 28 U.S.C. § 1404(a), a district court may transfer a case "[f]or the convenience of the parties and witnesses [or] in the interests of justice to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Unlike a motion to transfer based upon 28 U.S.C. § 1406(a), which is based on the propriety of venue, a motion under 28 U.S.C. § 1404(a) is not a personal privilege that a party may waive. See Agricultural Ins. Co., 2000 WL 1568313, at *2, 2000 U.S. Dist. LEXIS 15410, at *5. Instead the decision to transfer is left to the "broad discretion of the district court and [is] determined upon notions of convenience and fairness on a case-by-case basis." Publicker Indus. Inc. v. United States (In Re Cuyahoga Equip. Corp.), 980 F.2d 110, 117 (2d Cir.1992) (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

■ A court's inquiry surrounding the propriety of transfer under 28 U.S.C. § 1404(a) is twofold. First, the Court must "determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court. Second, the court must determine whether, considering the 'convenience of the parties and witness' and 'interests of justice,' a transfer is appropriate." Orb Factory Ltd., 6 F.Supp.2d at 208 (quoting 28 U.S.C. § 1404(a)).

■ The parties do not dispute that the Central District of California is a district where the case might been brought.

The Court therefore turns its attention to whether transfer is warranted "for the convenience of parties and witnesses [and] in the interests of justice." 28 U.S.C. § 1404(a). Defendants have the burden of making a "clear-cut showing" that transfer is warranted. *Smart v. Goord,* 21 F.Supp.2d 309, 315 (S.D.N.Y.1998) (citations omitted). In order to meet this burden Defendants must show that the following factors militate towards transfer:

> (1) convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of circumstances.

*Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250 (S.D.N.Y.1995) (quotation omitted).

### i. *Convenience of the Witnesses*

▆▆▆▆ Convenience of both party and non-party "witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 657 (S.D.N.Y.1998) (citations omitted). However, "when a party seeks to transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). As a result, if the moving party makes vague generalizations about the witnesses it intends to call, it will not have met its burden and its motion will be denied. *See Orb Factory Ltd.,* 6 F.Supp.2d at 208–09.

Defendants point out that between nine and fourteen party fact witnesses that it intends to call reside in Los Angeles, California. Specifically, Defendants note that all the witnesses whom it intends to call from defendant Whitehall Financial Group ("Whitehall") are located in Los Angeles including, the President of Whitehall, Gerry Ginsberg, and other party witnesses, such as Ilene S. Weingarten, Philip A. Fitzpatrick, Rita C. Vila, Robert I. Wiengarten, Palomba Weingarten, and Gary Winnick. Additionally, Defendants note that at least five other non-party fact witness they intend to call are located in Los Angeles, including Abbot Brown, Barry Porter, Clint Walker, David Lee and Andrew Haas.

Mitigating against transfer is the existence of seven defense witness who reside mostly in various portions of the east coast, three of whom reside in New York.[1] Plaintiff also notes at least two witnesses whom it intends to call reside in New York.[2] Although the Court's calculus of witness location as it relates to transfer is not strictly a numbers counting endeavor, upon the evidence provided, it appears that twelve witnesses who will be called upon to provide testimony reside in California while seven witnesses reside in New York or other parts of the East Coast. Given this fact, the Court concludes that convenience of the witnesses militates, although not strongly, in favor of transfer.

### ii. *Location of Documents*

▆▆▆▆ The relevant documents and sources of proof include Defendants' financial files and records located in California as well as Plaintiff's financial files and records located in New York. Mitigating

---

1. These witnesses are J.E. Roberts who lives in McLean, Virginia, Martin Granoff and Neil Crespi who live in New York, New York, Jason Wolff who resides in Boston, Massachusetts, Nguyen Le who lives in Amsterdam, Sue Brody who lives in Bayside, New York, and Carol Ross whose residence is unknown.

2. These witnesses are Frank T. Halligan and Paul B. Slosek.

against transfer, according to Plaintiff, is the fact that one of Defendants' allegations is that the debtors misrepresented their financial condition to them at the time the parties entered into the loan transaction. Although Plaintiff asserts that the books and records pertaining to debtor's office equipment leasing business and its financial condition includes thousands of banker boxes of documents, the Court is not concerned about the volume of this general information concerning the debtor's business. Rather, it is concerned with those files that relate specifically to the transactions at issue in the current proceeding and, in particular, the debtor's financial condition and the value of the debtor's Aegis stock at the time of the transaction.

Plaintiff has made no showing that these documents are particularly bulky, voluminous, or difficult to transfer. At the same time, Defendants have made no showing that the documents in their possession are particularly difficult to transport. As a result, the Court concludes that this factor favors neither party.

### iii. Convenience of the Parties

■ As to the convenience of the parties, Defendants point out that, in addition to the party witnesses already discussed who live in Los Angeles, California, all the remaining defendants also reside in Los Angeles, California. Thus, all twelve defendants reside in Los Angeles, California while the Trustee, as plaintiff, is the only party that resides in New York. This disproportionate fact weighs heavily in favor of transferring the case to the Central District of California.

### iv. Locus of Operative Facts

■ The loans at issue in the current case were negotiated by telephone and fax between the debtor, located in this district, and Gerry Ginsburg, located in Los Angeles. Moreover the closing of the transactions at issue took place in New Jersey, an area outside of both districts. These facts therefore do not militate either in favor or

against transfer. However, the fact that the actual foreclosure sale on Aegis' stock took place at 2121 Avenue of the Stars in Los Angeles, California gives rise to a weak inference in favor of transfer.

### v. Process to Compel Witnesses

Under Fed.R.Civ.P. 45(b)(2) a district court may compel an unwilling witness who resides in the court's district or within 100 miles of the courthouse to attend any deposition, hearing, trial, production, or inspection specified in a properly issued subpoena. See Fed.R.Civ.P. 45(b)(2). If a subpoena is served on a non-party and it forces the non-party to travel more than 100 miles from where it resides, the court must quash or modify the subpoena. See Fed.R.Civ.P. 45(c)(3)(A)(ii). In addition if a subpoena requires a non-party to travel more than 100 miles to attend trial and the non-party is located in the state in which the trial is held, the Court may modify the subpoena to ensure that the non-party is reasonably compensated. See Fed. R.Civ.P. 45(c)(3)(B)(iii).

■ Applying these principles to the instant case reveals that if the case remains before this Court, the Court will be able to compel all the party witnesses from California to appear before it. As to the five non-party fact witnesses located in California and the witnesses in Massachusetts, Virginia, and Amsterdam, the Court would not be able to compel their appearance before it, assuming they were unwilling to appear. In total, it appears that this Court cannot compel eight non-party fact witnesses to appear before it but could compel four non-party witnesses.

If this Court transferred the case, the California court could not compel the two Bennett witnesses named as well as any additional Bennett witnesses needed to appear before it. In addition, the California court could not compel the defense witnesses who reside in New York, Virginia, Massachusetts, Amsterdam, and Bayside to appear before it. Thus, the California

Court could not compel at least eight non-party witnesses but could compel five non-party witnesses to appear before it.

Given these ambiguous results, the Court concludes that this factor favors neither transferring the case to California nor keeping the case in this district.

### vi. *Means of the Parties*

■ Particularly because the current proceeding arises out of a trustee's claim in bankruptcy to avoid alleged fraudulent transfer, the means of the parties weighs against transfer. The bankruptcy estate is composed of limited resources which the Trustee has an obligation to maintain and conserve. Therefore, forcing the Trustee to litigate the current fraudulent conveyance claims in California will impose an additional expense on him that he would not otherwise have to incur. At the same time, Defendants are all still engaged in ongoing business that are not, to this Court's knowledge, in bankruptcy. As a result, they are in a better position financially to litigate the current proceeding in New York as opposed to the Trustee litigating his claims in California. Accordingly, this factor favors keeping the case in this Court.

### vii. *Familiarity with Governing Law*

■ Both parties dispute whether the New York or California version of the Uniform Commercial Code applies to the transactions before the Court. The Court finds that there is no reason not to enforce the choice of law clause contained in the promissory notes underlying the disputed transactions. The choice of law provisions in the notes state that they are to be "governed by, construed under and enforced in accordance with the laws of the State of California" and courts have routinely enforced similar choice of law provisions even when a party challenges the contract as fraudulent or claims of fraudulent inducement exist. *See Turtur v. Rothschild Registry Int'l Inc.*, 26 F.3d 304, 309–10 (2d Cir.1994); *Palace Exploration*

*Co. v. Petroleum Dev. Co.*, 41 F.Supp.2d 427, 438 (S.D.N.Y.1998). Consequently, the Court concludes that the Central District of California is more familiar with the governing law of the case. This factor favors transferring the case.

### viii. *Plaintiff's Choice of Forum*

■ Plaintiff's choice of forum is normally entitled to substantial weight and "should not be disturbed unless the balance of the factors is strongly in favor of the defendant." *Berman*, 30 F.Supp.2d at 659 (citations omitted). However, when a § 1404(a) motion involves a forum selection clause and the language of the clause is mandatory rather than permissive, as the clauses in the promissory notes currently before the Court are, "deference to the plaintiff's choice of forum is inappropriate." *Strategic Mktg. & Communications v. Kmart Corp.*, 41 F.Supp.2d 268, 273 (S.D.N.Y.1998) (citations omitted). The Court therefore does not grant Plaintiff's choice of forum much, if any weight.

### ix. *Trial Efficiency and Interests of Justice*

■ The presence of the forum selection clauses, which the Defendants negotiated under the assumption that they would cover all litigation arising out of the promissory notes, has a large impact "and figures centrally" in this Court's analysis of whether, in the interests of justice, to transfer the case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Indeed, this Circuit has noted that there is a "heavy presumption" in favor of enforcing forum selection clauses. *Mediterranean Shipping Co. S.A. Geneva v. Pol–Atlantic*, 229 F.3d 397, 405 (2d Cir.2000). In addition, "once a forum selection clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he should be relieved from his contractual duty." *Strategic Mktg. & Communications*, 41 F.Supp.2d at 273; *Weiss*

v. *Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y.1992).

██ In an effort to challenge the validity of the forum selection clauses, Plaintiff asserts that, because there are claims of fraudulent inducement and fraud surrounding the parties entrance into the promissory notes, the forum selection clauses should not be enforced. Additionally, Plaintiff argues that, because the Trustee's claims are not derivative of the debtors, he is not bound by the contractual choice of forum. Finally, the Trustee argues that, even if the clauses are valid, enforcement under the current circumstances is unreasonable and unjust because of the allegations of fraud surrounding the underlying notes.

██ As to Plaintiff's first and third arguments, a party challenging a forum selection clause as invalid because of fraudulent inducement has to make a "strong showing of unreasonableness, fraud, or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see Mediterranean Shipping Co.*, 229 F.3d at 405. Moreover, to invalidate a forum selection clause the Trustee has to show that the fraud alleged relates to the clause specifically and not simply to the contract as a whole. *See J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, No. 98–9191, 1999 WL 319330, at *1 (2d Cir. May 4, 1999); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The Plaintiff has made no showing that the fraud alleged relates specifically to the forum selection clauses.

Instead, he simply argues, relying on cases not from this Circuit, that the contracts as a whole were procured by fraud and this, standing alone, is enough to vitiate the forum selection clauses. This is not the law in this Circuit. Consequently, the Court disagrees with Plaintiff's assertion and concludes that, because the fraud and fraudulent inducement claims alleged do not relate specifically to the forum selection clauses, the Court will not utilize these claims to nullify the forum selection clauses.

██ Plaintiff's second claim, does however impact significantly on the Court's analysis regarding transfer of the case to California. In particular, the Court is loathe to transfer a bankruptcy action pursuant to a forum selection clause when the majority of the matters alleged constitute core proceedings under the bankruptcy code. *See In re Commodore Int'l, Ltd.*, 242 B.R. 243, 261 (Bankr.S.D.N.Y.1999). Transferring a core matter that is not "inextricably intertwined" with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court. *Id.*; see *North Parent, Inc. v. Cotter & Co. (In re North Parent, Inc.)*, 221 B.R. 609, 621 (Bankr.D.Mass.1998). At the same time, when, as here, the Court has already withdrawn the reference from the bankruptcy court, the policy behind centralizing core matters in the bankruptcy court is not applicable. As a result, the Court does not conclude that the Trustee's argument regarding its derivative status impacts against enforcing the forum selection clause against him. *See In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir.1987); *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1162 (3d Cir.1989); *Envirolite Enter. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.*, 53 B.R. 1007, 1013 (S.D.N.Y. 1985).

## III. CONCLUSION

After balancing the above factors, the Court concludes that the Defendants have made a clear cut showing that transfer is warranted. In particular, the Court relies upon the fact that the matter has already been withdrawn from the Bankruptcy Court, all twelve party defendants reside in the Central District of California, a majority of the witnesses identified by the parties reside in the Central District of California, California law will determine

the outcome of this dispute, and the promissory notes underlying the claims at issue contain mandatory forum selection clauses requiring adjudication in California.

Accordingly, it is hereby

ORDERED that, pursuant to 28 U.S.C. § 1404(a) and L.R. 83.6, Defendants' motion to transfer the Case to the United States District Court for the Central District of California is GRANTED; and it is further

ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.