**Michael A. CERUSSI, III, Plaintiff,**

v.

**UNION COLLEGE, Kathleen Schurick, Patricia G. Williams and Sarah Handler, Defendants.**

**No. 01 CIV 3711 WCC.**

United States District Court, S.D. New York.

June 6, 2001.

Clark, Gagliardi & Miller, P.C. (Lawrence T. D'Aloise, Jr., Of Counsel), White Plains, NY, for Plaintiff.

Nixon Peabody LLP, (James P. O'Brien, Jr., Christopher J. Porzio, Andrew C. Rose, Of Counsel), Garden City, NY, for Defendants Union College, Kathleen Schurick and Patricia G. Williams.

MacCartney, MacCartney, Kerrigan & MacCartney, (Mary E. Marzolla, Of Counsel), Nyack, NY, for Defendant Sarah Handler.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Michael A. Cerussi III moves for a preliminary injunction ("PI") pursuant to FED. R. CIV. P. 65 against Union College ("UC"), Kathleen Schurick and Patricia G. Williams, both Associate Deans of Students at UC, and Sarah Handler, a freshman at UC (collectively, "defendants"), and defendants move to transfer the action to the Northern District of New York pursuant to 28 U.S.C. § 1404.

Plaintiff, formerly a senior at UC, was expelled in February 2001 after an investigative report written by Schurick led to disciplinary hearings overseen by Williams, at which he was found guilty of raping Handler. Plaintiff alleges that because he is male, Schurick and Williams discriminated against him and pre-determined his guilt, thereby violating both UC's Disciplinary Procedural Guidelines ("DPG") and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"). Plaintiff sues Handler for defamation and intentional infliction of emotional distress, and seeks, *inter alia,* immediate reinstatement at UC. For the

following reasons, defendants' motion to transfer venue is granted.

### BACKGROUND

The following facts are either undisputed or alleged by plaintiff and accepted as true for the purpose of this motion. Plaintiff and Frederik Bailey [1] met Handler at a bar near UC late Friday night, November 11, 2000. Handler accompanied them back to their fraternity house and had sexual intercourse with both men. Plaintiff and Handler talked afterwards, he drove her home, and she kissed him good-night. Handler then joked with her roommate, Rosie Drennan, about having sex with both men, and did not state that she had been raped.

At brunch the next morning, Handler told a girlfriend, Lindsay Homenick, that she had sex with two men, but did not claim that she had been raped. But shortly thereafter, when some of plaintiff's fraternity brothers laughed as they passed her table, Handler assumed they had been told that she had sex with plaintiff and Bailey. That evening, Handler received a phone call from John Gregory, another of plaintiff's fraternity brothers, and inferred from the conversation that Gregory knew she had sex with plaintiff and Bailey. Sometime later, Handler concluded that she had been raped, went to Ellis Hospital and reported the same. Nurse Carol Fritz Braungart examined Handler and observed redness at the vaginal base, but Handler did not allow Braungart to examine her internally, take pictures or complete a full rape collection kit.

On the following day, November 13, 2000, Handler reported to Schurick that she had been raped. Plaintiff and Bailey

---

1. Bailey, a UC student and plaintiff's fraternity brother during the incidents in question, was also expelled but is not a party in this action.

were suspended and charged with violating provisions of the UC Student Conduct Code ("SCC"). Schurick investigated Handler's claims and interviewed Handler, plaintiff, Bailey, Braungart and several other students who had various roles in the incident. Schurick took notes of her interviews and drafted an investigative report but did not include all her notes in that report. Plaintiff claims Schurick herself unilaterally conducted an administrative review of the alleged incident without offering plaintiff and Bailey the option of a hearing before a sub-council of their peers, as is provided for by the SCC. Based on her investigative report, Schurick found plaintiff and Bailey guilty and reported her finding to Dean of Students Frederick Alford. Alford informed plaintiff of his expulsion by letter dated December 12, 2000.

Pursuant to the DPG, plaintiff appealed to Roger H. Hull, President of UC. Hull determined that plaintiff was not afforded a proper hearing, vacated Alford's expulsion and ordered a hearing at which plaintiff could confront Handler and call witnesses. On December 29, 2000, plaintiff received written notice from Alford that his hearing would take place on January 2, 2001 with Williams overseeing it, which plaintiff claims again deprived him of the option to have a student sub-council hear his case. Plaintiff states that at the hearing Williams deprived him of his right to review all the information, to confront and call all the relevant witnesses, to question Handler specifically about certain details and to consult with his attorney and parents. Williams found plaintiff guilty, and Alford accepted Williams's determination and upheld plaintiff's expulsion.

Plaintiff again appealed to Hull, who remanded the matter for a limited hearing, allowing plaintiff only to question Drennan and Homenick, and plaintiff objected to the hearing's limited scope. On February 1, 2001, both Drennan and Homenick testified that although Handler told both of them that she had sex with plaintiff and Bailey, she never told either of them that she had been raped. Nonetheless, Williams stated that she did not hear any information that would change her initial determination, and again found plaintiff guilty. Alford accepted Williams's finding and affirmed plaintiff's expulsion.

On April 11, 2001, plaintiff filed the Complaint in New York State Supreme Court for the County of Westchester. Defendants removed the action to this Court on May 2, 2001 pursuant to 28 U.S.C. § 1441. We held an initial conference on May 11, 2001, heard oral arguments and set an expedited briefing schedule for both motions.

## DISCUSSION

### I. *Transfer of Venue Standard*

28 U.S.C. § 1404(a) allows for a transfer of venue "[f]or the convenience of parties and witnesses, [and] in the interest of justice." Furthermore, "[venue transfer] motions are in the Court's discretion to grant or deny and are 'determined upon notions of convenience and fairness on a case-by-case basis.'" *Clesi v. Zinc Corp. of America,* No. 00 Civ. 6786, 2001 WL 225241, at *2 (S.D.N.Y. Mar. 6, 2001) (quoting *Hall v. South Orange,* 89 F.Supp.2d 488, 493 (S.D.N.Y.2000)). A court deciding a transfer motion must engage in a two-step analysis. "[T]he Court must first determine whether the case could have properly been brought in the transferee court." *Id.* (citing *Berman v. Informix Corp.,* 30 F.Supp.2d 653, 656 (S.D.N.Y.1998)). It is undisputed that this action could have been brought in the Northern District. All the defendants presently reside there, all of the events giving rise to plaintiff's claims occurred there, and UC, the site where the events

took place, is located there (in Schenectady, New York). *See* 28 U.S.C. § 1391(b).

▉ The transferee court's jurisdiction having been established, "the [transferor] Court must next consider whether the transfer is appropriate based upon several factors." *Clesi*, 2001 WL 225241, at *2. These factors include:

(1) the locus of operative facts;

(2) the convenience to parties;

(3) the convenience of witnesses;

(4) the location of relevant documents and the relative ease of access to sources of proof;

(5) the availability of process to compel attendance of unwilling witnesses;

(6) the relative means of the parties;

(7) the weight accorded to plaintiff's choice of forum;

(8) the forum's familiarity with the governing law; and

(9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*See Handler v. Regents of the Univ. of Michigan*, No. 00 Civ. 6314, 2000 WL 1635701, at *2 (S.D.N.Y. Nov. 1, 2000); *Douglas v. Syracuse Univ. Coll. of Law*, No. 94 Civ. 9195, 1995 WL 555693, at *1 (S.D.N.Y. Sept. 18, 1995). The burden is on the moving party to establish that a transfer is appropriate. *See id.* Based on the totality of circumstances, we find that defendants have carried their burden.

## A.  *Locus of Operative Facts*

As is stated above, all the facts took place in or around UC, and thus in the Northern District.  Moreover, the Southern District has only minimal connections to the case.  Plaintiff currently resides in Westchester County, but has done only since his expulsion (*i.e.,* less than 6 months).  He was a UC student and thus a Northern District resident at the time of the alleged rape, and resided in Riverside, Connecticut throughout the disciplinary process.  *See Watkins v. Harvard Univ.*, No. 89 CV. 2602, 1989 WL 135181, at *4 (S.D.N.Y. Nov. 3, 1989) ("One party's residence in a chosen forum, without more connecting a case to that forum, is insufficient to keep a case in that forum."). Plaintiff argues that three potential witnesses also live in Westchester County. However, as will be explained below in greater detail, more key witnesses live in the Northern District than the Southern District.  (*See infra* Sections C., D.) Therefore, this factor clearly favors transfer.

## B.  *Convenience to Parties*

Plaintiff lives in the Southern District and all defendants presently live and work in the Northern District; thus, "one party or the other must travel." *Douglas*, 1995 WL 555693, at *1. Plaintiff argues that because Handler's parents reside in Manchester, Connecticut, which is 20 miles closer to White Plains than to Albany, New York (site of the Northern District courthouse in which the case will likely be heard), the Southern District is more convenient for her.  However, because Handler is a student at UC, she obviously is not inconvenienced by traveling to Albany. Moreover, plaintiff's argument assumes both that all depositions and court appearances will occur when UC is not in session and that Handler will live at her parents' house during that time.  However, because colleges are in session for roughly 8 out of 12 months in a year, it is more likely than not that Handler's court obligations will occur during the school year, thus rendering the Northern District more convenient for her.  Therefore, this factor also supports transfer.

## C.  *Convenience of Witnesses*

The material witnesses in the instant action are those who actually took part in

the disciplinary process, and they have varying degrees of importance.[2] The key witnesses are plaintiff, Bailey, Handler, Schurick, Williams, Alford and Hull. Although Braungart and students Dana Tannenbaum and John Erlichman testified at the January 2, 2001 hearing, and Drennan and Homenick testified at the February 2, 2001 re-hearing, they all played lesser roles. Additionally, Schurick interviewed students Gregory, Joe Long, Owen O'Brien and Chris Burns, but none of them testified at either hearing. Of these potential witnesses, Schurick, Williams, Handler, Alford, Hull and Braungart reside or work in the Northern District, and Homenick, Long and Gregory still attend UC, and thus likely reside on or near the campus (*i.e.*, in the Northern District). Plaintiff and Bailey live in the Southern District, Drennan apparently no longer attends UC and lives in New Jersey, and neither plaintiff nor defendants have named O'Brien or Burns as a potential witness.

Even if, as plaintiff argues, Tannenbaum, Long, Erlichman and Gregory will have graduated or completed their last trimester and moved out of the Northern District by the time discovery begins, there is a split of convenience at best. Moreover, the most significant witnesses all live and work in the Northern District, save for plaintiff and Bailey. *See Promuto v. Waste Mgmt. Inc.*, 44 F.Supp.2d 628, 639 (S.D.N.Y.1999) (Conner, J.) (" '[I]t is not the number of prospective witnesses that the determines the appropriateness of transfer but, rather, the materiality of their anticipated testimony.' ") (citation omitted); *Douglas*, 1995 WL 555693, at *3 ("[Plaintiff] has failed to address the fact

that the faculty, *i.e.*, those individuals whom [plaintiff] alleges discriminated against her and whose testimony appears most relevant to this case, all reside in [the Northern District] and its surrounding areas."). Plaintiff also argues that his expert witnesses will be inconvenienced. However, it is well settled that "the location of expert witnesses is irrelevant to a transfer decision." *See Clesi,* 2001 WL 225241, at *3 (citing *Brown v. Dow Corning Corp.*, No. 93 Civ. 5510, 1996 WL 257614, at *2 (S.D.N.Y. May 15, 1996)). Thus, this factor also supports transfer.

### D. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

There is very little documentary evidence in this case, and what does exist can be easily accessed in either district. Thus, this factor favors neither party.

### E. Availability of Process to Compel Attendance of Unwilling Witnesses

Plaintiff argues that the witnesses from Connecticut and New Jersey that he intends to call would be subject to process from the White Plains courthouse but not the Albany courthouse under the 100–mile rule. *See* Fed. R. Civ. P. 45(b)(2). However, as is discussed *supra* in Section C., the majority of the key witnesses are located in the Northern District. The testimony of others can be obtained by deposition if necessary. Moreover, the witnesses who would be expected to testify on plaintiff's behalf "have a stronger personal motive to testify that may well outweigh the persuasion of a subpoena." *Watkins,* 1989 WL

---

**2.** Plaintiff argues that his parents and certain witnesses from Handler's hometown will be inconvenienced by a transfer to the Northern District. However, these witnesses took no part in the disciplinary process. Instead, they will serve only as character witnesses either for plaintiff or against Handler. Thus their testimony will have little or no bearing on the outcome of the case against UC and its administration.

135181, at *3. Thus, although witnesses will be inconvenienced by trying the case in either district, because more material witnesses will be inconvenienced by keeping this case in the Southern District, this factor favors transfer to the Northern District.

### F. Relative Means of Parties

Plaintiff argues that UC "may be ... defended in this case through insurance coverage, and it is known that defendant Handler is being defended through insurance coverage." (Pl. Mem. Opp. Transfer at 10.) However, he provides no proof to support this argument. Nonetheless, even if all defendants' costs were being covered by insurance, it would bear little on our consideration of the transfer motion, because "[t]he relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a venue change." *Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713, 716 (S.D.N.Y.1987) (granting defendant's motion to transfer despite financial burden imposed on student plaintiff); *Coker v. Bank of America*, 984 F.Supp. 757, 767 (S.D.N.Y.1997) ("To the extent [plaintiff's] claim of unfairness is based on ... the additional expense of [plaintiff's] flying from Nigeria to New Mexico (over the expense of flying from Nigeria to New York), [that] factor[ ][is] entitled to little weight.").

Plaintiff also argues that "the cost to [him] in having his lawyers travel back and forth to Albany for discovery, Court proceedings and the trial would be significant." (Pl. Mem. Opp. Transfer at 10.) However, this assertion is belied by the fact that plaintiff was able to retain counsel and have them present in Schenectady for the duration of the disciplinary process. Moreover, we note that one of plaintiff's own counsel, Mr. Miller, indicated to opposing counsel after the initial court con-

ference that he had not charged plaintiff for his time on the case to that point. (*See* O'Brien Reply Aff. ¶ 36.) Therefore, although this factor favors plaintiff's choice of forum, its weight is limited.

### G. Weight Accorded to Plaintiff's Choice of Forum

Generally, a court "should defer to the plaintiff's choice of forum." *Watkins*, 1989 WL 135181, at *2. However, courts "may give [it] substantially less deference when the 'operative facts upon which the litigation is brought bear little material connection to the chosen forum.'" *Clesi*, 2001 WL 225241, at *2 (quoting *Berman*, 30 F.Supp.2d at 659); *Handler*, 2000 WL 1635701, at *1; *Watkins*, 1989 WL 135181, at *3. As is stated *supra* in Sections I. and II.A., all the operative facts took place in or around UC (*i.e.*, in the Northern District), and the Southern District's only connections to the case are plaintiff's residence here at the time he filed his state court complaint and the location of the offices of plaintiff's counsel. Therefore, this factor is of less than its usual significance here.

### H. Forum's Familiarity with Governing Law

Plaintiff concedes that "the governing law concerning this case is equally familiar to both the courts in Westchester and Albany." (D'Aloise Aff. ¶ 7.) This factor thus favors neither party.

### I. Trial Efficiency and Interest of Justice Based on Totality of Circumstances

Plaintiff states that "UC is affiliated with Union University which includes Albany Law School ... [and] UC and Albany Law School have a direct relationship," and that because "[b]oth schools have a pervasive and influential presence

throughout the Northern District" (Pl. Mem. Opp. Transfer at 9), plaintiff may face juror bias if the case is transferred there. However, plaintiff has proffered only self-serving, conclusory allegations to support this claim, and thus "without proof of improper bias, [his] assertion does not compel [rejecting transfer]." *Clesi,* 2001 WL 225241, at *3. Moreover, plaintiff's attorney can mitigate any "hometown" juror bias, for "the function of the voir dire is to minimize the problem of biased jurors." *Berry v. New York State Dep't of Corr. Servs.,* 808 F.Supp. 1106, 1110 (S.D.N.Y.1992).

Plaintiff also notes that "[t]he former Chief Judge of the Northern District who is still active trying cases in Albany sits on the Board of Trustees of Albany Law School [and][t]he Senior Magistrate and his replacement are Albany Law School graduates." (Pl. Mem. Opp. Transfer at 9.) The combination of these facts, plaintiff argues, renders "Westchester County ... a much more level playing field." *(Id.)* Defendants correctly point out, however, that "under plaintiff's flawed logic, no case in which the [UC] is a party could be litigated in the Northern District." *(Id.* at 8.) Moreover, if plaintiff suspects that any Northern District judge creates potential conflict issues, he can request that judge to recuse him or herself. Thus, we find plaintiff's "fairness" arguments of limited persuasiveness.

Plaintiff further argues that "[i]f the case is transferred, the new court will have to learn what this Court already knows. Also, moving the case to Albany will further delay the resolution of plaintiff's [PI] motion." *(Id.)* However, as is stated *supra* in Section D., the documentary evidence in the action is minimal. Thus, it will not take the transferee court long to familiarize itself with the case. Moreover, even if plaintiff were reinstated at UC today, he would not be able to attend any classes because the school is at the end of its academic year. Thus transfer will have no practical adverse effect on plaintiff's ability to resume his studies at UC.

In sum then, we find that trial efficiency and the interest of justice will be furthered by transferring this action to the Northern District. It is the locus of all the operative facts and the majority of both the parties and the material witnesses reside there. Moreover, plaintiff has not demonstrated that he will be unduly burdened by transfer of the action. Therefore, the totality of circumstances supports defendants' motion for transfer.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer venue is granted. Having so ruled, this Court will not resolve plaintiff's motion for a preliminary injunction. *See Clesi,* 2001 WL 225241, at *3 (granting defendants' motion to transfer but reserving decision on motion to dismiss); *Handler,* 2000 WL 1635701, at *3 (same). The Clerk of the Court shall send a certified copy of this Opinion and any original documents filed in this action to the Clerk of the Court for the Northern District of New York.

SO ORDERED.