**PDK LABS, INC., Plaintiff,**

**v.**

**PROACTIVE LABS, INC., Defendant.**

**No. 03–CV–772 (FB).**

United States District Court,
E.D. New York.

July 15, 2004.

J. Christopher Jensen, Esq., Cowan, Liebowtiz & Latman, P.C., New York, NY, for Plaintiff.

A. Todd Merolla, Esq., Raiford & Dixon LLP, Atlanta, GA, for Defendant.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff PDK Labs, Inc. ("PDK") brought this action alleging trademark and trade dress infringement of its registered trademarks for "Two–Way" and "Max-brand" in the marketing of its over-the-counter bronchodilator medicine, along with related claims of unfair competition. Defendant Proactive Labs, Inc. ("Proactive") has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Alternatively, Proactive moves for a change of venue to the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b) and § 1404(a). For the reasons that follow, Proactive's motions are denied.

### I.

PDK brought this suit on February 18, 2003, seeking to prevent Proactive from launching an ephedrine bronchodilator medicine utilizing a "2–Way Ephedrine Max" trademark and trade dress. Proactive has not released this product, although it concedes that it hopes to launch the product in the future. *See* Oral Argument Transcript, June 8, 2004, at 13. Pursuant to a hearing held before the Court on March 11, 2003, PDK was granted the right to conduct discovery relating to the issue of whether Proactive's contacts with New York State were sufficient to establish personal jurisdiction.

Because the parties have conducted jurisdictional discovery, PDK must aver facts that, if credited, would suffice to establish jurisdiction over Proactive, rath-

er than merely pleading in good faith legally sufficient allegations of jurisdiction. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990). A plaintiff's averment of jurisdictional facts after discovery may be contested either by 1) a Rule 12(b)(2) motion challenging the sufficiency of the alleged facts, 2) a Rule 56 motion asserting that undisputed facts demonstrate the absence of jurisdiction, or 3) a request for an adjudication of disputed jurisdictional facts through a hearing or during the course of trial. *See id.* By filing a Rule 12(b)(2) motion, the defendant assumes the truth of plaintiff's factual allegations for purposes of the motion; therefore, "plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Id.*

## II.

### A. Jurisdiction

■ "In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs Inc. v. Friedlander* 103 F.3d 1105, 1108 (2d Cir.1997) (quotation omitted). Therefore, "the court must first look to the long-arm statute of the forum state." *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Id.*

PDK argues that the Court has jurisdiction over Proactive under two subsections of New York's long arm statute, N.Y. CPLR §§ 302(a)(1) and 302(a)(3). For the Court to have personal jurisdiction over a defendant under § 302(a)(1), the defendant must have transacted business in New York and the cause of action must arise out of those transactions. *PDK Labs,* 103

F.3d at 1109. *See also Agency Rent A Car Sys. v. Grand Rent A Car Corp.,* 98 F.3d 25, 31 (2d Cir.1996) (requiring a "substantial nexus" between the business transacted and plaintiff's cause of action). Under § 302(a)(3), the Court can exercise jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed ... in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate ... commerce."

Because the Court determines that it has jurisdiction over Proactive under § 302(a)(3), it need not consider whether it would also have jurisdiction under § 302(a)(1).

### 1. Jurisdiction Under N.Y. CPLR § 302(a)(3)

PDK alleges that Proactive's decision to package its ephedrine product in the "2–Way Ephedrine Max" packaging and its advertising and offering to sell the product in that allegedly infringing packaging constitute the requisite tortious act. In addition to having displayed the allegedly infringing trademark and trade dress on its website, which is maintained outside of New York but is, obviously, accessible within the state, Proactive concedes that it has also displayed the packaging at national trade shows outside of New York, and that it is likely that New York customers were in attendance at those shows. *See* Deposition of Kimberly Stratford, at 92. PDK alleges that this packaging caused injury in New York by confusing PDK's New York customers and potential customers. Turning to § 302(a)(3)(ii), PDK

avers that Proactive's awareness of PDK's marks and that PDK has its principal place of business in New York are sufficient for Proactive to have reasonably expected its actions would have consequences in New York, and that Proactive derives substantial revenue from interstate commerce.

It is undisputed that PDK filed its lawsuit at a time when Proactive had started to market—but had not actually launched—its product, and that Proactive has never sold the product. Under § 302(a)(3), the threshold questions, therefore, are 1) whether a tortious act has been committed outside of New York State, and, if so, 2) whether it caused injury to person or property within New York State.

### a. The Commission of a Tortious Act Outside of New York

■ At oral argument, counsel for Proactive argued that no tort had been committed because there had been no sales; therefore, jurisdiction under § 302(a)(3) must fail. *See* Oral Argument Transcript, June 8, 2004, at 3. Counsel for PDK argued that, because trademark law protects against the potential for consumer confusion, the threat of launching the product constituted a tort causing injury in New York. *See id.* at 6.

Trademark infringement, as codified in the Lanham Act, is not limited to situations where the infringing mark has been used in connection with the actual sale of a product. The Lanham Act imposes liability on any person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, *offering for sale*, distribution, or *advertising* of any goods or services." 15 U.S.C. § 1114(1)(a) (emphasis added). "Trademark infringement can be a 'tort' for purpose of determining long-arm jurisdiction." *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Insur.*

*Group, Inc.,* 312 F.Supp.2d 247, 253 (D.Conn.2004).

Therefore, courts have found that trademark infringement litigation may proceed even in the absence of the product having been sold. *See Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1335 (E.D.Mo.1996) (Lanham Act infringement action not premature when defendant's web site sent out information regarding allegedly infringing product, even though product itself was not yet operational); *Essie Cosmetics, Ltd. v. Dae Do International, Ltd.,* 808 F.Supp. 952, 957 (E.D.N.Y.1992) ("In a trademark infringement action, a court may grant injunctive relief 'even before defendant actually opens the business,' so long as the threatened act of defendant is 'imminent and impending.' ") (quoting J. Thomas McCarthy, *Trademarks and Unfair Competition,* § 30.5 at 470 (2d ed.1984)); *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.,* 662 F.Supp. 203 (S.D.N.Y. 1987) (although defendant's product had not entered the marketplace, trademark infringement action was not premature when defendant had sent product samples to two distributors and had printed product labels). Thus, although Proactive has not actually sold the product with the allegedly infringing packaging, its promotion of the product on its web site and at trade shows is sufficient to constitute a tort under the language of the Lanham Act and the supporting case law.

### b. Causing Injury Within New York

■ In *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978), plaintiff sought to enjoin the employment of a former employee by defendant, a business competitor, in order to prevent the employee from divulging alleged trade secrets to the defendant. The Appellate Division held that it lacked long-arm jurisdiction over the defendant under

§ 302(a)(3) "because no tortious act had as yet been committed." *Id.* at 203, 413 N.Y.S.2d 127, 385 N.E.2d 1055. The Court of Appeals reversed, holding that it was sufficient that "a tortious act will have been committed ... although the consequential economic injury in this state is still only anticipated." *Id.* at 204, 413 N.Y.S.2d 127, 385 N.E.2d 1055. The Court concluded that "[i]f a tort must already have been committed for jurisdiction to be available under [§ 302(a)(3)], then that section would never be usable by a plaintiff seeking anticipatory injunctive relief. Such a result is unacceptable." *Id.* In the present case, the alleged tort has been committed outside of New York, but the resultant injury is, at this juncture, more anticipated then actual. *Sybron* instructs that this is sufficient for finding jurisdiction under § 302(a)(3). *See ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termo–Plastici S.P.A.,* 775 F.Supp. 650 (S.D.N.Y.1991) (noting that threatened economic injury is sufficient under § 302(a)(3)) (citing *Sybron* ).

■ Additionally, district courts in trademark infringement cases have stated that an injury within the state includes harm and threatened harm in the New York market resulting from the actual or potential confusion and deception of New York internet users. *See American Network v. Access America/Connect Atlanta, Inc.,* 975 F.Supp. 494, 497 (S.D.N.Y.1997) (under New York law, "the requirement of injury within the state is met by plaintiff's claims of harm and threatened harm in the New York market resulting from the confusion and deception of New York computer users"); *Starmedia Network, Inc. v. Star Media, Inc.,* 2001 WL 417118 at *6 (S.D.N.Y.2001) ("Plaintiff's allegations of harm resulting from the potential for confusion and deception satisfy the requirement of an injury within the state.") (quotation omitted). Therefore, the harm and threatened harm to PDK from confusion of

its actual or potential New York customers who view Proactive's packaging constitutes a sufficient injury under § 302(a)(3).

### c. Other Requirements of § 302(a)(3)

PDK having averred facts sufficient to establish a tortious act causing injury in New York, the additional requirements of § 302(a)(3)(ii)—that Proactive expected or reasonably should have expected its allegedly tortious actions to have consequences in New York, and that it derives substantial revenue from interstate commerce— are sufficiently averred, and Proactive does not contend otherwise.

The Court, therefore, determines that it has personal jurisdictional over Proactive pursuant to § 302(a)(3).

### 2. Due Process

■ The exercise of personal jurisdiction under a state long-arm statute comports with constitutional due process only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations omitted); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The defendant's contacts with New York should be such that "it should reasonably anticipate being haled into court [here]." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ In considering the reasonableness inquiry, the Court must consider the following factors:

1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests in the forum state in adjudicating the case; 3) the plaintiff's

interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996) (citing *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113–16, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

■ Proactive has not argued that the exercise of jurisdiction over it in New York would violate due process. Given that Proactive has extensively contracted for both manufacturing and distribution within New York state, it clearly possesses the requisite minimum contacts; the Court has also considered the reasonableness factors and determines that a finding of jurisdiction over Proactive comports with due process.

**B. Venue**

Proactive makes two arguments regarding venue: that venue is not proper in the Eastern District of New York under the general venue statute, 28 U.S.C. § 1391(b), and that the Court should transfer the case to the Northern District of Georgia in the interests of justice pursuant to 28 U.S.C. § 1404(a).

■ Section 1391(c) provides that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Thus, "section 1391(c) equates jurisdiction with venue ... for corporate defendants." *Laumann Mfg. Corp. v. Castings USA,* 913 F.Supp. 712, 719 (E.D.N.Y.1996). Proactive's claim under § 1391(c) must therefore fail.

■ Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The factors the Court should consider in determining whether to exercise its discretion to transfer include:

The convenience of the parties; the convenience of the witnesses; the relative ease of access to the sources of proof; the availability of the process to compel attendance of unwilling witnesses; the costs of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interests of justice.

*Excelsior College v. Frye,* 306 F.Supp.2d 226, 231 (N.D.N.Y.2004) (quotations omitted).

"Convenience of the witnesses is generally the most important consideration when deciding a motion to transfer venue under section 1404(a)." *Schwartz v. Marriott Hotel Services, Inc.,* 186 F.Supp.2d 245, 249 (E.D.N.Y.2002). A plaintiff's choice of forum is generally entitled to considerable weight; the court should not disturb it unless the defendant makes a clear and convincing showing that the balance of convenience strongly favors the defendant's choice. *See generally Berman v. Informix Corp.,* 30 F.Supp.2d 653, 656 (S.D.N.Y.1998); *Orb Factory Ltd. v. Design Science Toys, Ltd.,* 6 F.Supp.2d 203, 210 (S.D.N.Y.1998). "However, the emphasis placed by a court on this choice diminishes where the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Berman,* 30 F.Supp.2d at 659 (quotation omitted).

Proactive states that it anticipates calling two employees and one non-employee at trial, all of whom reside in Georgia. It also argues that the relevant documents for the case are located in Georgia, and that the events giving rise to the litigation

occurred there. PDK responds that its sole place of business is in New York, and that it is therefore more convenient for them to have the action in New York, just as it would be for the defendant to have it in Georgia.

The sole substantive dispute in this case is whether Proactive's trademark and trade dress infringe PDK's marks. Resolving such a dispute requires relatively little in the way of witnesses or documents. Other than convenience for Proactive, there is scant reason to believe that transferring this case to Georgia would serve the interests of justice. "The purpose of § 1404(a) is not to shift the inconvenience from one party to the other." *Laumann Manufacturing*, 913 F.Supp. at 721. A change of venue is therefore not warranted.

### CONCLUSION

For the reasons set forth above, the Court determines that it has jurisdiction over Proactive, and declines to transfer the case to the Northern District of Georgia. Defendant's motions are denied.

**SO ORDERED.**