**BROADCAST MARKETING INTERNATIONAL, LTD. Plaintiff**

v.

**PROSOURCE SALES & MARKETING, INC. Defendant**

**No. CIV.A. 3:04–cv–00517(JCH).**

United States District Court, N.D. Connecticut.

Nov. 22, 2004.

Stephen P. McNamara, St. Onge, Steward, Johnston & Reens, LLC, Stamford, CT, for Plaintiff.

Joseph G. Fortner, Jr., Patrick M. Birney, Halloran & Sage, LLP, Hartford, CT, for Defendant.

## RULING RE: DEFENDANT'S MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE TO CHANGE VENUE [DKT. NO. 14]

HALL, District Judge.

Plaintiff, Broadcast Marketing International, Ltd. ("Broadcast"), brings this civil action against Prosource Sales & Marketing, Inc. ("PSMI"), pursuant to the Lanham Act, 15 U.S.C. § 1114 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a, *et seq.* *See* Pl's Compl. [Dkt. No. 1]. Broadcast, the owner of the trademark "Prosource," for the distribution of film and video production equipment and related accessories, alleges that PSMI is using the marks "Prosource" and "Prosource Sales and Marketing" in connection with its distribution of digital media, in violation of Broadcast's trademark rights.[1] *See Id.*

---

1. Broadcast registered the trade name and service mark "Prosource" on June 3, 1997, under U.S. Trademark Registration No.

PSMI has moved to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction, and for improper venue pursuant to Rule 12(b)(3). In the alternative, PSMI has moved to change venue under 28 U.S.C. § 1404(a). *See* Def.'s Mem. Supp. Mot. to Dismiss Compl. [Dkt. No. 15]. For the reasons stated below, the Defendant's Motion to Dismiss the Complaint and its Motion to Change Venue are both **DENIED**.

## I. *FACTS* [2]

Broadcast is a Connecticut corporation located in Fairfield, Connecticut, which operates a nationwide business under the name "Prosource." On June 3, 1997, Broadcast officially registered its trademark "Prosource" with the United States Patent and Trademark Office, obtaining Reg. No. 2,066,206. Provided Broadcast continues to comply with the provisions of Section 8 of the Trademark Act of 1946, *as amended,* Broadcast's registered trademark will remain valid until 2007.

Under the mark "Prosource," Broadcast distributes and sells film and video production equipment, including digital cameras and digital video recording equipment. Broadcast's production equipment is used by film and video production companies, television stations, news crews, studios, and other users of broadcast, corporate, industrial, and professional quality video.

PSMI is a Nevada corporation located in Sparks, Nevada, which operates under the name Prosource Sales & Marketing. PSMI is in the business of manufacturing and distributing digital media products, such as DVDs, CD–Rs, magnetic disks,

and digital audio tapes. PSMI does not have any offices, agents, or property in the state of Connecticut. Furthermore, PSMI has never sent sales persons into the state of Connecticut to solicit business. PSMI's business is conducted primarily through outbound calls from employees to potential customers throughout the country. A substantially smaller amount of PSMI's sales are furnished by customers who call PSMI's 1–800 number directly. Since 1995, PSMI has also maintained a website at http://www.prosourcesales.com, which allows customers to purchase products directly through the Internet.

From January 1995 until June 6, 2004, PSMI's sales to Connecticut customers totaled $314,029. Over that same period, PSMI's website, prosourcesales.com, generated seven sales from Connecticut businesses and individuals, totaling $518.27.

On March 29, 2004, Broadcast filed a complaint against PSMI alleging trademark infringement and unfair competition under federal and state law. *See* Pl's Compl. [Dkt. No. 1]. Broadcast seeks injunctive relief as well as monetary damages and attorney's fees and costs.

## II. *DISCUSSION*

### A. Personal Jurisdiction

 "On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litigation,* 334 F.3d 204, 206 (2d Cir.2003) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996)). The nature of that burden, however, de-

---

2,066,206. Pl's Compl., App. Ex. A, Certificate of Registration.

**2.** "When considering a Rule 12(b)(2) motion, the court construes any factual averments and resolves all doubts in the plaintiff's favor."

*American Wholesalers Underwriting, Ltd. v. American Wholesale Insurance Group, Inc.,* 312 F.Supp.2d 247, 251 (D.Conn.2004) (citing *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986)).

pends upon the procedural posture of the case. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196–97 (2d Cir. 1990); *see also American Wholesalers Underwriting, Ltd. v. American Wholesale Insurance Group, Inc.*, 312 F.Supp.2d 247, 251 (D.Conn.2004). Where, as in the instant case, an extensive amount of discovery has been conducted regarding the defendant's contacts with the forum, but no hearing held, the plaintiff must make a prima facie showing, including an averment of facts, that if presented to the trier of fact would suffice to establish that personal jurisdiction is appropriate over the defendant. *Ball*, 902 F.2d at 197; *American Wholesalers Underwriting, Ltd.*, 312 F.Supp.2d at 251. In addition, because there has been no evidentiary hearing on the jurisdictional allegations, or a trial on the merits, "all pleadings and affidavits are construed in the light most favorable to [the] plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001).

■ "In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process.'" *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)). Because the Lanham Act does not provide for nationwide service of process,[3] the court must rely on the law of the forum state to determine whether the de-

fendant is subject to personal jurisdiction in that state. *American Wholesalers*, 312 F.Supp.2d at 251; *see also Tomra of North America, Inc. v. Environmental Products Corp.*, 4 F.Supp.2d 90, 92 (D.Conn.1998). This is a two-fold analysis. First, the plaintiff must prove that the applicable state's long-arm statute reaches the defendant. Second, if the plaintiff satisfies this initial burden, the court must then determine whether in personam jurisdiction comports with the requirements of the Due Process Clause of the Fifth Amendment. *See American Wholesalers*, 312 F.Supp.2d at 251; *Ensign–Bickford Company v. ICI Explosives U.S.A. Inc.*, 817 F.Supp. 1018, 1026 (D.Conn.1993) (Cabranes, J.). The defendant's action must establish "certain minimum contacts ... [so] that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1941)).

■ Thus, the first issue is whether Connecticut's long-arm statute reaches the defendant. A foreign corporation is subject to in personam jurisdiction in Connecticut pursuant to Conn. Gen.Stat. § 33–929(f), which provides in pertinent part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign com-

---

**3.** "Pursuant to 28 U.S.C. § 1331, federal district courts have 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.' Pursuant to 28 U.S.C. § 1338, federal district courts have 'original jurisdiction of any civil action arising under an Act of Congress relat-

ing to ... trade-marks.'" *Tomra of North America, Inc.*, 4 F.Supp.2d at 92 n. 3. While section 1338 of title 28 of the United States Code, grants original jurisdiction over trademark claims, there is no mention of nationwide service of process. *See* 28 U.S.C. § 1338.

merce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen.Stat. § 33–929(f) (1998). The court concludes that the defendant's conduct is sufficient to satisfy the requirements of the Connecticut long-arm statute on at least two grounds.[4]

▪ First, section 33–929(f)(4) of the Connecticut General statute reaches PSMI because the cause of action arises "out of tortious conduct in [Connecticut] ... arising out of repeated activity or single acts ...." *Id.* at (f)(4). Under Connecticut law, trademark infringement is considered a "tort" for the purposes of determining personal jurisdiction pursuant to the state long-arm statute. *American Wholesalers,* 312 F.Supp.2d at 253, *citing On–Line Technologies v. Perkin Elmer Corp.,* 141 F.Supp.2d 246, 264 (D.Conn.2001). In this context, "the infringement must be the act of selling products that infringe upon the plaintiff's trademark, and the infringement

must take place in the forum state." *Id.* A cause of action for trademark infringement arises " 'where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.' " *American Wholesalers,* 312 F.Supp.2d at 253, *quoting Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir.1956); *Whelen Engineering Co. v. Tomar Electronics, Inc.,* 672 F.Supp. 659, 662 (D.Conn.1987). A showing of only one infringing sale is enough to establish long-arm jurisdiction over the infringing party. *American Wholesalers,* 312 F.Supp.2d at 253, *citing Bensusan Restaurant Corporation v. King,* 937 F.Supp. 295, 299 (S.D.N.Y.1996); *see Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.,* 829 F.Supp. 62, 64 (S.D.N.Y.1993); *German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co.,* 569 F.Supp. 1529, 1532 (S.D.N.Y.1983); *see also Whelen Engineering,* 672 F.Supp. at 662–63 (concluding that the sale of an infringing product to *one Connecticut customer* vested the court with long-arm jurisdiction over the defendant).

Here, PSMI admits that it uses the mark "ProSource Sales & Marketing, Inc" as an identifier of its business and in communications with customers and potential customers in Connecticut. Pl's Supplemental Opp'n Mot. Dismiss or Transfer at 4. Furthermore, the defendant concedes that it has sold seven products using that mark through its internet web site at http://prosourcesales.com, and has generated a total of $314,029 of business from Connecticut customers. Because the mark used by PSMI, generally and on its website, is strikingly similar to Broadcast's registered trademark, "Prosource," and the record

---

4. Although the court recognizes that there may be jurisdiction over PSMI under Conn. Gen.Stat. 33–929(f)(2), the court need not address this issue because the court concludes

that the exercise of personal jurisdiction is sufficiently authorized by Conn. Gen.Stat. § 33–929(f)(3) and (f)(4).

reflects numerous sales in Connecticut using the infringing mark, Broadcast has made a prima facie showing, together with averments of facts. Indeed, evidence of infringing sales to Connecticut customers is sufficient to establish that PSMI is subject to personal jurisdiction pursuant to Conn. Gen.Stat. § 33–929(f)(4).

Alternatively, the long arm statute reaches the PSMI under Conn. Gen.Stat. § 33–929(f)(3) because the cause of action arises "out of the production, manufacture, or distribution of goods ... with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed ...." Conn. Gen. Stat. § 33–929(f)(3). Although the Second Circuit stated in dicta that the "main thrust" of § 33–411(c)(3) "was to define the personal jurisdiction of Connecticut courts in product liability cases," this provision of the Connecticut long-arm statute has been applied in patent-infringement cases.[5] *See Buckley v. New York Post Corp.*, 373 F.2d 175, 177–78 (2d Cir.1967); *see also Ensign–Bickford Company v. ICI Explosives U.S.A. Inc.*, 817 F.Supp. 1018 (D.Conn. 1993) (Cabranes, J.).

In *Ensign–Bickford*, a corporation headquartered in Connecticut brought an action against a Canadian corporation claiming, among other things, patent infringement and unfair trade practices under both federal and Connecticut law. 817 F.Supp. at 1018. The Canadian corporation filed a motion to dismiss for lack of personal jurisdiction. The principal dispute between the parties was whether the defendant corporation could have reasonably expected its products to be used or consumed in Connecticut. The Canadian corporation asserted that it had " 'no

control whatsoever over the purchaser's resale or use of the device." *Id.* at 1027. The corporation further argued that there was only a "mere likelihood" that its product would be used or consumed in Connecticut. *Id.*

Ultimately the court held that the defendant had a reasonable expectation that its product would be used or consumed in Connecticut, and therefore was subject to personal jurisdiction under the Connecticut long arm statute. *Id.* In so concluding, the court took various factors into consideration in order to make its decision. The court first took into account the fact that the defendant corporation had sent 100,000 units to the United States for distribution. *Id.* at 1026. The court also considered evidence that the Canadian corporation had established a detailed market plan for introducing its product to the United States market. *Id.* In addition, the court emphasized that the Canadian corporation had established a network of distributors in the United States, including 40 distributors in 26 states. *Id.*

First, there is no dispute in the instant case over whether the cause of action arises out of PSMI's distribution of its products to the Connecticut market. Broadcast filed trademark infringement claims and unfair practice claims, which arose directly from PSMI's sales to Connecticut customers. *See* Pl's Compl. [Dkt. No. 1] Second, unlike the defendant in *Ensign–Bickford*, here PSMI cannot argue that it lacked a reasonable expectation that its products would be used in Connecticut. PSMI intended to sell and did sell products directly to Connecticut. PSMI conceded that its products are "pri-

[5]. The *Ensign–Bickford* Court held that section 33–411(c)(3) of the Connecticut long-arm statute applied in "any cause of action." 817 F.Supp. at 1028. Section 33–411(c)(3) was the equivalent of today's Connecticut long-

arm statute for foreign corporations, Conn. Gen.Stat. § 33–929(f)(3). *See Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 110 n. 9 (D.Conn.1998).

marily sold by outbound sales calls from PSMI employees." Aff. Siever at 3, ¶ 12. Because PSMI generated total sales of $314,029 in Connecticut, mainly through outbound telephone solicitations, there is no doubt that Connecticut was part of its intended market. Likewise, there was no middle man distributor in the instant case. Connecticut customers ordered PSMI products directly from the corporation, either through its website or by phone. PSMI even acknowledged that "[a]ll purchase orders are cut, and bills are paid, from PSMI's offices in Nevada." Aff. Sievers at 3, ¶ 11. Therefore, as a national distributor, PSMI was aware and had control over each product's destination. Because PSMI had a "reasonable expectation" that its products would be used in Connecticut, the court concludes that the exercise of personal jurisdiction is also authorized by Connecticut's long arm statute, Conn. Gen.Stat. § 33–929(f)(3).

■ Because the court has determined that PSMI's conduct is sufficient to meet the requirements for personal jurisdiction under the Connecticut long-arm statute, the court now must address the second part of the analysis: the court must determine whether the exercise of personal jurisdiction over PSMI comports with the Due Process Clause of the Fifth Amend-

ment.[6] *See, e.g. On–Line Techs. v. Perkin Elmer Corp.,* 141 F.Supp.2d 246, 262 (D.Conn.2001), *citing Bensmiller v. E.I. Dupont de Nemours & Co.,* 47 F.3d 79, 81 (2d Cir.1995). This due process test has two components: 1) the "minimum contacts" inquiry;[7] and 2) the "reasonableness" inquiry. *Metro. Life,* 84 F.3d at 567. The defendant argues that the exercise of personal jurisdiction would violate both components of the due process test because its contacts with Connecticut are not sufficient to satisfy the minimum contacts standard and "exercising personal jurisdiction over [PSMI] would violate traditional notions of fair play and substantial justice." Def's Mem. at 15–21.

To begin, the court acknowledges the long line of cases in this and other jurisdictions which have already grappled with the thorny questions concerning the exercise of personal jurisdiction in the context of Internet cases. The court in *On–Line Techs. v. Perkin Elmer Corp.,* 141 F.Supp.2d 246, 265 (D.Conn.2001), sought to summarize the case law with respect to personal jurisdiction in Internet cases:

> Courts that have considered the issue of whether web presence creates personal jurisdiction in a particular forum have categorized Internet use into three areas for the purpose of determining

---

6. Because this cause of action is based on a federal question, the due process requirements are derived from the Fifth Amendment, as opposed to the Fourteenth Amendment. Although most of the personal jurisdiction jurisprudence is based on the Fourteenth Amendment, there is no difference in the court's analysis when dealing with the Fifth Amendment. *See Hanil Bank v. PT. Bank Negara Indonesia, (Persero),* 148 F.3d 127, 134 (2d Cir.1998) (carrying out the due process analysis under the Fifth Amendment in the same manner as it would under the Fourteenth Amendment); *Aerogroup International Inc. v. Marlboro Footworks, Ltd.,* 956 F.Supp. 427, 439 n. 16 (S.D.N.Y.1996).

7. Under the minimum contacts analysis, a distinction is made between specific and general jurisdiction cases. *Met. Life* at 567–77. Specific jurisdiction exists where the suit arises from the defendant's contacts with the forum. *See Id.,* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 & n. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Unlike general jurisdiction, where the plaintiff has a more stringent burden of proving "continuous and systematic contacts" with the forum, no such burden is required in cases of specific jurisdiction. *Id.* Because this case arises out of PSMI's conduct with Connecticut, this is a case of specific jurisdiction and does not require the enhanced burden.

whether the exercise of personal jurisdiction is permitted. *See VP Intellectual Properties v. Imtec Corp.,* 1999 U.S. Dist. LEXIS 19700, 53 U.S.P.Q.2D (BNA) 1269[, 1999 WL 1125204] (D.N.J. 1999). At one end of the spectrum are cases where individuals can directly interact with a company over their Internet site, download, transmit or exchange information, and enter into contracts with the company via computer. In such cases, the exercise of jurisdiction is appropriate, particularly when combined with evidence of sales from the forum state. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). At the other end of the continuum are cases where the defendant has only advertised on the Internet, and where another medium such as the telephone or mail is necessary to contact the seller; in the case of such "passive" sites, personal jurisdiction usually does not lie. *See Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground between the two extremes involves sites where parties can interact with the defendant company, but may not be able to contract with the company or make purchases over the Internet site; in such situations, most courts follow the lead of the Western District of Pennsylvania in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997)[,] and determine whether jurisdiction is proper by "examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." 952 F.Supp. at 1124. See, *e.g., Search Force v. Dataforce Int'l,* 112 F.Supp.2d 771 (S.D.Ind. 2000) (noting that the Fifth, Ninth, and Tenth Circuits have relied upon the ana-

lytical framework set out in *Zippo Mfg.* to determine the propriety of exercising jurisdiction based on Internet activity). *Id.* at 265; *see generally Millennium Enters., Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 913–923 (D.Or.1999)(exhaustive discussion of personal jurisdiction analyses in Internet cases to date). "[T]he trend has shifted away from finding jurisdiction based solely on the existence of Web site advertising. Instead, 'something more' is required to show that the defendant purposefully directed its activities at the forum." *Millennium Enters., Inc. v. Millennium Music, LP,* 33 F.Supp.2d at 915 (citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir.1997)); *see also National Football League v. Miller,* 2000 WL 335566, *1, 2000 U.S. Dist. LEXIS 3929, *1–2 (S.D.N.Y.2000) ("It is now established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit. However, one who uses a web site to make sales to customers in a distant state can thereby become subject to the jurisdiction of that state's courts.")(*citing Bensusan Restaurant Corp.,* 126 F.3d 25)(other citations omitted).

▪ "A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction." *Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119, 1122 (W.D.Pa.1997)(citing *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996)). As the *Bensusan* court itself observed: "The mere fact that a person can gain information on the allegedly infringing product is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in [the forum state]."[8] 937 F.Supp. at 299. This court

---

8. The fact that a website is passive does not necessarily dictate a finding of no jurisdiction, however. "Those courts which have asserted jurisdiction in cases involving passive Web

sites did so because the defendant had additional contacts with the forum which related to the plaintiff's claim." *Millennium Enters., Inc.,* 33 F.Supp.2d at 916 (citing *Gary Scott*

concludes that the website operated by PSMI was not a passive site. Although the website could perhaps be properly characterized as an "active website," for purposes of this Ruling, the court need only find that the website falls somewhere in "the middle ground," *On–Line Techs.*, 141 F.Supp.2d at 265.

Although PSMI alleges that its website is "in essence an electronic catalog," the fact of the matter remains that customers can place product orders directly through the website. Aff. Sievers at 4, ¶ 16. PSMI admits that it has sold $518.27 worth of products to Connecticut customers through this website. While this number may represent a small percentage of PSMI's business, the maintenance of an interactive website, combined with PSMI's more traditional contacts with Connecticut, compel a finding that the exercise of personal jurisdiction is proper. *See Whelen Engineering Company v. Tomar Electronics*, 672 F.Supp. 659, 663 (D.Conn.1987) (exercising personal jurisdiction over the defendant even though its "business relationship with the district was not highly developed" based on the fact that the defendant could have anticipated its product to enter the forum state either on a specific instance or on a regular basis) (citations omitted). As noted earlier, the majority of PSMI's sales were solicited through outbound phone calls from PSMI employees located in Nevada. *See* Aff. Sievers at 3, ¶ 12. This is not a case where the unilateral acts of a third party brought PSMI's advertising or products to the forum state. *See Whelen Engineering*, 672 F.Supp. at 664 (citing *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). In fact, it is undisputed that PSMI's "product promotion and sales comprehended markets in Connecticut." *Whelen Engineering*, 672 F.Supp. at 664.

Moreover, PSMI has purposely availed itself to personal jurisdiction in the state of Connecticut. As held in *World–Wide Volkswagen*, the "defendant's conduct must be such that he should reasonably anticipate being haled into court." 444 U.S. at 298, 100 S.Ct. 559. The *World–Wide Volkswagen* Court asserted that it is not unreasonable to subject a party to personal jurisdiction in a forum state where sales arise from the efforts of the manufacturer or distributor to directly or indirectly serve the market. *Id.* In addition, "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the plurality court disagreed with the stream of commerce test declaring that more is necessary than mere placement into the stream of commerce in order to constitute personal jurisdiction. *Id.* at 112, 107 S.Ct. 1026.

The facts of this case establish purposeful availment under either test and thus compel the court to exercise personal jurisdiction over PSMI. Here, PSMI not only sold and distributed products directly to Connecticut through phone solicitations, but the company also used an interactive website to both advertise its business and produce sales. *See Mieczkowski v. Masco Corporation*, 997 F.Supp. 782, 787 (E.D.Tex.1998) (concluding that web sites

*International, Inc. v. Baroudi*, 981 F.Supp. 714 (D.Mass.1997)(jurisdiction based on sales of infringing products to Massachusetts retailer in addition to Web site advertising); *He-* *roes, Inc. v. Heroes Foundation*, 958 F.Supp. 1, 3–5 (D.D.C.1996) (jurisdiction based on Web site and advertisement in local newspaper soliciting donations)).

providing information about the company and its products may be considered an advertisement). As demonstrated above, PSMI's contacts with the state of Connecticut are sufficient to "anticipate being haled into court" and consequently the minimum contacts test is satisfied.

▪▪▪ Because the court has concluded that PSMI has sufficient contacts with the forum state, the court must now address the second component of the due process inquiry. The second part of the test, or the "reasonableness" inquiry, requires that personal jurisdiction over the defendant must "comport with traditional notions of fair play and substantial justice." *Met. Life,* 84 F.3d at 573. The burden is on the defendant to prove a compelling case that personal jurisdiction is unreasonable under the circumstances. *See Asahi,* 480 U.S. at 113, 107 S.Ct. 1026; *Met. Life,* 84 F.3d at 568; *Burger King v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The *Asahi* court developed five factors to determine whether the exercise of personal jurisdiction is reasonable and fair under the circumstances. *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026. These five factors include: 1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the interests of the forum state in adjudicating the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies. *Met. Life,* 84 F.3d at 568 (citing *Asahi,* 480 U.S. at 113–14, 107 S.Ct. 1026).

PSMI fails to satisfy its burden in demonstrating that the exercise of personal jurisdiction would be unfair in the instant case. All of the factors, with the exception of the first, weigh in favor of Broadcast and compel the court to exercise personal jurisdiction over PSMI. In its defense, PSMI merely asserts that it only has de minimis connection to Connecticut and that defending the action in the District of Connecticut would offend traditional notions of fair play and substantial justice. *See* Def's Mem. at 21. These arguments are insufficient to overcome PSMI's difficult burden of presenting a compelling case of unfairness. *Met. Life,* 84 F.3d at 568 (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). Considering that the other four factors overwhelmingly weigh in favor of jurisdiction, the court concludes that personal jurisdiction over PSMI is appropriate in the instant case and does not violate "traditional notions of fair play and substantial justice."

Based on the above analysis, the court concludes that the exercise of personal jurisdiction over PSMI is authorized under the Connecticut long-arm statute and comports with the Due Process Clause of the Fifth Amendment. Consequently, PSMI's motion to dismiss for lack of personal jurisdiction is denied.

### B. Venue

▪▪ PSMI also asserts that the instant action should be dismissed for lack of venue pursuant to Federal Rules of Civil Procedure 12(b)(3). The court concludes, however, that venue is proper under section 1391(b) and (c) of Title 28 of the United States Code.[9]

Section 1391(b)(1) allows an action to be brought "in a judicial district where any defendant resides if all defendants reside in the same State." 28 U.S.C. § 1391(b)(1). Section 1391(c) further clarifies that a defendant corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction

---

**9.** The defendant incorrectly cites the venue statute as 28 U.S.C. § 1331.

at the time the action is commenced." 28 U.S.C. § 1391(c). "Essentially section 1391(c) equates jurisdiction with venue for corporate defendants." *Divicino v. Polaris Industries,* 129 F.Supp.2d 425, 435 (D.Conn.2001) (citing *Dave Guardala Mouthpieces, Inc. v. Sugal Mouthpieces, Inc.,* 779 F.Supp. 335, 337 (S.D.N.Y.1991)); *PDK Labs, Inc. v. Proactive Labs, Inc.,* 325 F.Supp.2d 176, 182 (E.D.N.Y.2004). Therefore, because the court has concluded that the exercise of personal jurisdiction is appropriate over the defendant in the District of Connecticut, venue is also proper.

 Finally, PSMI contends that the matter should be transferred to the District of Nevada pursuant to 28 U.S.C. § 1404(a). Section 1404(a) declares that a district court may transfer a civil action to any district it may have been brought "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). In making this decision, courts typically consider the following factors: 1) the location of the events giving rise to the suit; 2) the convenience of the parties; 3) the convenience of the witnesses; 4) the relative ease of access of proof; 5) the availability of process for unwilling witnesses; 6) plaintiff's choice of forum; 7) a forum's familiarity with the governing law; 8) trial efficiency; and 9) the interest of justice.[10] *O'Brien v. Okemo Mountain, Inc.,* 17 F.Supp.2d 98, 103–04 (D.Conn.1998); *Lever Brothers Company v. Procter & Gamble Company,* 23 F.Supp.2d 208, 210 (D.Conn.1998).

The court concludes, after weighing the above considerations, that PSMI has not satisfied its burden of demonstrating that the action would be more convenient in the District of Nevada. First, the court must give substantial consideration to the plaintiff's choice of forum, especially in a case where the plaintiff resides in the district where the case was filed. *Deleo v. Zconnexx Corporation,* 2000 WL 1610668 (W.D.N.Y.) (citing *A. Olinick & Sons v. Dempster Bros., Inc.,* 365 F.2d 439, 444 (2d Cir.1966); *Stonehenge, Ltd. v. Garcia,* 989 F.Supp. 539, 542 (S.D.N.Y.1998)). Here, Broadcast filed a claim against PSMI in the District of Connecticut. Because Connecticut is both Broadcast's forum choice and home forum, Broadcast's choice is entitled to the court's deference.

Moreover, PSMI fails to present sufficient evidence to shift the balance of the considerations in its favor. The action arises out of allegedly infringing products that were sold to Connecticut customers. Thus, the events that gave rise to the suit occurred in Connecticut. *See Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein,* 936 F.Supp. 177 (D.Del.1996) (citing *Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994); *Tefal, S.A. v. Products Int'l Co.,* 529 F.2d 495, 496 n. 1 (3d Cir.1976)) (concluding that "[c]laims under the Lanham Act arise not where an allegedly deceptive label is affixed to the defendant's product but where a customer buys the product"). Connecticut is also better equipped to deal with the law governing the Connecticut Unfair Trade Practices Act. In addition, although PSMI asserts that Broadcast's witnesses all live outside of the District of Connecticut, none of these witnesses live in the District of Nevada. Because the alternate choice of venue would not be more convenient to these

---

**10.** The moving party, in this case the defendant, has the " 'burden of making out a strong case for transfer.' " *Filmline (Cross–Country) Productions, Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989), *quoting Ford Motor Co. v. Ryan,* 182 F.2d 329, 330 (2d Cir.1950); *see also O'Brien,* 17 F.Supp.2d at 102 (holding that the moving party has the burden of establishing that a change of forum is appropriate).

witnesses, this argument is unavailing. Finally, "it is legitimate and rational for a plaintiff to choose a forum in which consumers in the forum allegedly are being injured by the defendant's activities." *Joint Stock Soc. Trade House,* 936 F.Supp. at 187.

After reviewing the aforementioned considerations in light of the available evidence, the court holds that transfer of venue would be improper. The factors weigh largely in favor of Broadcast's choice of forum. Consequently, the Defendant's Alternate Motion for Transfer of Venue is denied.

### III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue is **DENIED**. Defendant's Alternative Motion to Change Venue is also **DENIED**. Plaintiff's Request for Leave is granted [Dkt. No. 26].

**SO ORDERED.**